# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 11-40071-04-JAR |
| **JUNAID IQBAL**, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This case is now before the Court on defendant Junaid Iqbal's Motion to Review Detention Order (Doc. 37). The government filed no written response but responded at the hearing and opposes the motion. The Court has reviewed defendant's brief and the oral arguments presented to the Court at the hearing and is prepared to rule. As described more fully below, defendant's motion is denied.

### I.     Background

The Indictment in this case charges five defendants and charges thirty-one counts. Defendant Iqbal is charged in nine counts, with including conspiracy, bank fraud, wire fraud, and Social Security fraud.

On September 15, 2011, Magistrate Judge Sebelius found, by a preponderance of the evidence, that defendant poses a serious risk of flight if released and that no conditions or combination of conditions of release will assure his attendance at trial. With this finding, Judge Sebelius ordered defendant detained pending trial. After Judge Sebelius's ruling, defendant filed a Motion to Review Detention Order pursuant to 18 U.S.C. § 3145(b). On October 19, 2011, the Court heard oral argument on defendant's motion.

## II. Standard of Review

The Court has authority to review the magistrate judge's detention order under 18 U.S.C. § 3145(b). A district court's review of a magistrate judge's detention order is de novo.[1] But the district court can rely on the evidence from the proceeding before the magistrate judge.[2] The district court can also rely on its own evidentiary hearing to determine whether detention is appropriate.[3] Regardless of the evidence used to determine whether detention is appropriate, the district court must decide "'both the facts and the propriety of detention anew without deference to the magistrate judge's findings.'"[4]

## III. Standard for Detention

Under the Bail Reform Act of 1984, a detention hearing is appropriate upon motion of the government when the defendant poses a serious flight risk or if the defendant presents a serious risk of obstruction of justice or of intimidation, threat, or injury to prospective witnesses or jurors.[5] After a hearing, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[6] Risk of flight and danger to the community are "'distinct statutory sources of authority to

---

[1] *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[2] *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

[3] *Id.*

[4] *United States v. Baghdasaryan*, No. 10-10060-2-EFM, 2010 WL 2545993, at *1 (D. Kan. June 22, 2010) (quoting *United States v. Poole*, No. 03-40065-01-SAC, 2004 WL 1732306, at *1 (D. Kan. July 15, 2004)).

[5] 18 U.S.C. § 3142(f).

[6] 18 U.S.C. § 3142(e).

detain,'" and as such, to have the defendant detained, the government only needs to prove one.[7]

The government must prove risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence.[8]

In determining whether the government has met its burden, the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>    (B) whether, at the time of the occurrence of the offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, States of local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .[9]

## IV. Discussion

After considering all of the evidence presented and the factors set out in 18 U.S.C. § 3142(g), the Court concludes that pretrial detention is warranted because the government has proved by a preponderance of the evidence that defendant poses a serious flight risk and that no conditions will assure defendant's appearance at trial. While notably, some factors tend to weigh

---

[7]*Baghdasaryan*, 2010 WL 2545993, at *1 (quoting *United States v. Daniels*, 772 F.2d 383, 383 (7th Cir. 1985)).

[8]*United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

[9]18 U.S.C. § 3142(g).

in favor of release—defendant is a United States citizen, he has family ties in Topeka, and he rejected a plea deal that would have allowed him leave the country with no further jail time—the Court finds that these factors are outweighed by factors favoring pretrial detention. The factors weighing in favor of detention include his inconsistent statements to the Pretrial Services officer, his behavior at the detention facility, his behavior at his first detention hearing, his family's minimal ties to the Topeka community, and his access to cash and ability to create false documents.

First, the Court finds defendant's inconsistent statements troubling. When the Pretrial Services officer interviewed defendant about his family history, defendant neglected to inform the officer that he had a brother living in Kansas. He only told the officer about his two sisters, but did not inform the officer that he had a brother. Defendant also reported to the Pretrial Services officer that he had not traveled to Pakistan or outside of the United States for one year. When the pretrial officer discovered defendant's brother and spoke with him, however, his brother reported that defendant had just traveled to Pakistan in May 2011 and stayed there for thirty to thirty-five days. Additionally, the government proffered evidence that airline records indeed showed travel in Abu Dhabi and Pakistan in June 2011, which U.S. Immigration and Customs Enforcement had confirmed. These inconsistencies tend to show that defendant is not being honest about his travel, ties to Pakistan, and family ties. The Court believes that defendant's selective disclosure of this material information about his past travel evidences a risk of flight. His dishonesty weighs against pretrial release.

Next, the Court finds that defendant's recorded calls from the detention facility indicate his desire to manipulate the rules of the detention facility and deceive the government. The

4

government proffered evidence that within one day of being detained, defendant had defeated the phone system at the detention center. By asking other people to place his calls and using other people's pin numbers, defendant tried to hide his calls from the government. This evidence suggests defendant is averse to following rules of the detention facility and desires to carry on secret conversations while in custody. This tends to show that he would not be amenable to conditions of release and would similarly find ways around the rules.

Additionally, defendant's demeanor and statements at his first detention hearing undermine his claim that he would rather serve a sentence than return to Pakistan if it means staying close to his family in Topeka. At his first detention hearing, defendant broke down and sobbed uncontrollably, stating that jail was "the worst of places to be." The government also proffered evidence that he had "freaked out" in jail. This behavior does not support defendant's argument he is willing to stay in jail instead of returning to Pakistan.

Further, the government proffered evidence that defendant's family ties to Topeka are not as strong as he claims. In his phone conversations while in custody, defendant told his wife to return to Pakistan and to marry again. These statements to his wife contradict claims made by defendant that he wants to stay in Topeka because his family is here. Indeed, it seems that defendant desires for his family to leave the country. Because defendant has stated that he wishes to remain close to family, the conversation with his wife suggests that defendant may also have a desire to return to Pakistan. Additionally, the government proffered that defendant's wife and mother are not citizens of the United States, and they also are not assimilated into the community in Topeka. Defendant does not usually converse with them in English, his wife did not have a driver's license until after defendant went into custody, and neither his wife nor his

mother would answer the door when the government went to the house to execute a search warrant. His family's lack of assimilation into the Topeka community minimizes his family ties here, and his request that his wife return to Pakistan suggests a desire to flee to Pakistan.

Likewise, the "go bag" found at defendant's house suggests a desire to flee. While searching defendant's home, the government found a laptop bag containing all of defendant's and his family's identification documents. Included in the bag were U.S. and Pakistani passports, including his one-year-old son's U.S. passport, birth certificates, social security numbers, and various unknown foreign documents. Defendant argues that the bag was merely a place to file all of his important documents. But defendant did not have these important documents secured or locked in any way. Additionally, defendant's wife and mother were required to keep some of these immigration related documents on their person, but instead the documents were kept in the bag with all of the family's travel documents. This evidence suggests that defendant had a plan in place to flee the country quickly if necessary. While the government now has custody of the identification and travel documents, the government argues that defendant could go to the nearest Pakistani consulate, request a replacement passport, and then leave the country through Mexico or Canada undetected if he is allowed pretrial release. Defendant does not dispute that he has the ability to obtain a replacement passport and leave the United States.

Finally, defendant's access to cash and his knowledge and ability to falsify documents make any conditions of release insufficient to assure his appearance at trial. The government proffers evidence that defendant runs cash businesses that bring in thousands of dollars daily and these businesses allow him ready access to cash. The government also proffered evidence that

6

defendant has used various names and social security numbers when opening accounts and starting businesses. The government has discovered three names and four false social security numbers so far. The government also proffered evidence that defendant has used his employees' social security numbers to create fraudulent documents for other employees. In a search of defendant's home, the government found numerous documents, credit cards, debit cards, and receipts in multiple names, some of which are unknown individuals. In a search of a storage unit, which defendant shared with a co-defendant, the government found a "treasure trove" of false identification documents in the names of many different people. The government stated that it continues to find new businesses and aliases the defendant has used in his various fraudulent schemes. The government further argues that defendant has attempted to continue these activities while in custody. During calls from the detention facility, defendant had discussions about money and the amount of cash generated from his businesses; he also instructed his wife to change the name of his stores and the names on accounts. The government suggests this evidence shows that defendant has a constantly changing identity, and that if released, defendant will use the cash generated by his businesses or stored in various accounts and his ability to create fraudulent documents to find a way to flee the country.

Defendant argues that the government has merely proved an ability to flee, which is insufficient to meet the government's burden,[10] and that defendant can be placed on house arrest and that both his sister and brother will sign personal or professional surety bonds to assure his appearance. The Court disagrees. The evidence demonstrates that defendant has the ability to flee, has had a plan to make a quick escape, has inquired about sources of cash, and has

---

[10]*See United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention.").

suggested that his wife leave the county.  Additionally, defendant has lied to his pretrial services officer about his family ties and travel abroad, and has evaded the rules of the detention facility, finding a way to defeat the phone system to suit his own wishes.  Defendant's demonstrated evasion of the rules of the detention facility proves that he will most likely not follow the conditions of release.  The Court thus finds by a preponderance of the evidence that defendant poses a serious risk of flight and that no conditions of release would reasonably assure defendant's appearance at trial.  Therefore, the Court finds pretrial detention appropriate and denies defendant's motion.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Junaid Iqbal's Motion to Review Detention Order (Doc. 37) is **DENIED**.

**IT IS SO ORDERED**.

Dated: October 26, 2011

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE